**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| JOHN LOMONICO, *et al.*, | : |
| Plaintiffs, | : Civil No. 18-11511 (RBK/AMD) |
| v. | : **OPINION** |
| FOULKE MANAGEMENT CORP., *et al.*, | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the motion of Defendant Foulke Management Corp. ("Foulke") to dismiss and compel arbitration (Doc. 4.) For the reasons expressed herein, this motion is hereby GRANTED IN PART and DENIED IN PART.

**I.     BACKGROUND**

On February 27, 2018, Plaintiffs John LoMonico and John Stephenson visited Cherry Hill Dodge, a car dealership operated by Defendant Foulke, to potentially purchase or lease a 2018 Dodge Ram. (Doc. 1-1 ("Compl.") ¶¶1–2.) Foulke proposed to sell/lease the car to Plaintiffs for $699 per month, and offered to purchase Plaintiffs' 2011 Buick as a trade-in vehicle for $10,000. (*Id.*) At that time, Foulke did not disclose to Plaintiffs the interest rate, term of the loan, the total sales price, or full terms of a lease. (*Id.* ¶3.) The agreed-upon plan was for Plaintiffs to return to Cherry Hill Dodge the next day, when they would both sign contract documents, and Stephenson would pay a $2,700 down payment. (*Id.* ¶4.)

Before Stephenson left the dealership, he signed a document that he believed indicated he

1

would co-sign for the financing or leasing of the Dodge Ram. (*Id*. ¶5.) Defendants did not give Stephenson a copy of this document. (*Id*. ¶6.) After signing, Stephenson left the dealership and LoMonico remained. (*Id*. ¶¶7–8.) LoMonico paid Foulke a $250 deposit, and then attempted to leave the dealership with the Buick. (*Id*. ¶8.) Defendants, however, "insisted that [LoMonico] take with him the 2018 Dodge even though he stated that he did not want to," and leave the Buick (*Id*. ¶9.) To take the Dodge, LoMonico states he was asked to sign "several documents." (*Id*. ¶¶10–11.) LoMonico alleges that Defendants did not provide him with copies of these documents after he signed them. (*Id*.)

The next day, February 28, 2018, LoMonico returned to Cherry Hill Dodge. (Compl. ¶12.) He told Defendants that he did not want the Dodge Ram, that Stephenson would not pay $2,700, and that he wanted the 2011 Buick returned. (*Id*. ¶12.) The manager refused to return the Buick or LoMonico's $250 deposit, tried to get Plaintiffs to sign a contract for the Dodge, and stated that Plaintiffs had to go through with the original deal. (*Id*. ¶13.)

Plaintiffs tried again over the next several days to recover their Buick and the $250 deposit, but each attempt was met with Foulke employees' refusal to return the Buick or money, as well as their insistence that Plaintiffs had a binding contract to buy the Dodge.[1] (Compl. ¶¶14–17.) On March 3, 2018, Stephenson again told Foulke that he would not pay the $2,700, and that LoMonico would not agree to Foulke's contract terms. (*Id*. ¶¶16–18.) At that point, Foulke returned the Buick to Plaintiffs. (*Id*. ¶18.) Defendants have not yet returned the $250 deposit. (*Id*. ¶19.)

### *Procedural History*

On June 11, 2018, Plaintiffs filed their Complaint in the Superior Court of New Jersey alleging common law fraud and violations of the New Jersey Consumer Fraud Act, the New Jersey

---

[1] Plaintiffs allege that they spoke to two specific Foulke employees—Derek Davis and Jose Ortiz—during these interactions. (Compl. ¶14.) Davis and Ortiz are also named as Defendants in this action.

2

Truth-in-Consumer Contract Warranty and Notice Act, the New Jersey Plain Language Act, the federal Truth-in-Lending Act, and the Consumer Protection Leasing Act. (Doc. 1-1.) Defendants removed the action to this Court and then moved to dismiss Stephenson's claims and compel arbitration of LoMonico's claims. (Doc. 4.)

Soon after the parties completed briefing on Defendants' motion to dismiss and compel arbitration, the New Jersey Supreme Court granted certification in a factually analogous case in which Foulke, its lawyer in this case, and Plaintiffs' lawyer in this case were all involved. *Goffe v. Foulke Mgmt. Corp.*, 194 A.3d 92 (N.J. 2018). Because the facts in *Goffe* were so similar, and because the parties' briefs in this case had heavily relied on the New Jersey Superior Court, Appellate Division's holding in *Goffe*, this Court stayed Defendants' motion pending the outcome of the New Jersey Supreme Court's decision in *Goffe*. (Doc. 27.) The New Jersey Supreme Court filed its opinion in *Goffe v. Foulke Mgmt. Corp.*, 208 A.3d 859, *reconsideration denied*, 213 A.3d 184 (N.J. 2019), in June 2019. After the New Jersey Supreme Court denied a subsequent motion for reconsideration, this Court reactivated Defendants' motion to dismiss and compel arbitration in this case. The Court addresses this motion now.

## II.     LEGAL STANDARD

### a.  Motion to Dismiss

When deciding a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the court limits its review to the face of the complaint. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011). The Court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the plaintiff. *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v.*

3

*Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The inquiry is not whether [a plaintiff] will ultimately prevail in a trial on the merits, but whether [he or she] should be afforded an opportunity to offer evidence in support of [his or her] claims. *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id*. (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can infer only that a claim is merely possible rather than plausible. *Id*.

    b. **Federal Arbitration Act**

The Federal Arbitration Act ("FAA") allows federal courts to compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Under the FAA, written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party seeking to enforce an arbitration agreement may petition

4

the Court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

Courts will not entertain a challenge to the "validity of the contract as a whole, as opposed to the arbitration clause in particular, [because such challenge] does not present a question of arbitrability." *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 180 (3d Cir. 2010) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006). The Court views challenges to the contract as a whole separately from those aimed at the arbitration contract because agreements to arbitrate are severable from a larger contract, and therefore may be separately enforced and their validity determined. *See Rent-A-Center v. Jackson*, 561 U.S. 63 (2010). Thus, to qualify as a question of arbitrability that the Court may consider, the challenge must "relat[e] to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 338 U.S. 395, 404 (1967).

### c. Motion to Compel Arbitration

On a motion to compel arbitration, the Court must inquire: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*; *see also* 9 U.S.C. § 4.

The Third Circuit has established a two-tiered framework for assessing motions to compel arbitration. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). If the face of the complaint and documents relied on in the complaint clearly show that a party's claim is subject to an enforceable arbitration clause, the Court will use a "Rule 12(b)(6) standard without discovery's delay." *Id.* at 777 (internal citation omitted). The motion to dismiss

standard is inappropriate, however, where "either the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate or the opposing party has come forth with reliable evidence that is more than a mere naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Id*. at 774. In such circumstances, "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing." *Id*. at 776. After this limited discovery is completed, the court "may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id*.

## III. DISCUSSION

In its motion, Foulke argues that the Complaint admits that LoMonico signed several documents on February 27, 2018. (Doc. 4-1 ("Def. Mot.").) Foulke asserts that these documents referenced in the Complaint include a valid arbitration agreement that should now be enforced. (*Id*. at 9.) As to Stephenson, Foulke does not seek arbitration, noting that Stephenson did not sign an arbitration agreement, but instead argues that his claims should be dismissed because he fails to allege facts that could support his causes of action. (*Id*. at 14–16.) The Court addresses each argument in turn.

### A. Motion to Compel Arbitration of LoMonico's Claims

Foulke argues that, because a signed Arbitration Agreement controls LoMonico's claims, the Court should dismiss this action and require LoMonico to arbitrate his claims. (Def. Mot. at 8–9.) Foulke produces several documents signed by LoMonico on February 27, 2018, including a Motor Vehicle Retail Order Agreement ("MVRO") (Doc. 4-5), an Arbitration Agreement (Doc. 4-6), and a Notice advising that there are no oral agreements (Doc. 4-7).

6

The MVRO included an arbitration provision located above LoMonico's signature, which states in bold capital lettering: "I acknowledge that I have received, read, understand and have signed the arbitration agreement which applies to this transaction, even if a purchase or lease is not completed." (Def. Mot. at 5.) The header on the separate Arbitration agreement states in bold, capital letters: "Read this arbitration agreement carefully. It limits certain of your rights, including your right to maintain a court action." (*Id*.) The Arbitration Agreement provides that the following disputes must be arbitrated:

- Whether the claim or dispute must be arbitrated;
- The validity of this arbitration agreement;
- Any negotiations between you and us;
- Any claim or dispute based on an allegation of fraud or misrepresentation, including fraud in the inducement of this or any other agreement;
- Any claim or dispute based on a federal or state statute including, but not limited to the N.J. Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. and the Federal Truth in Lending Act

(Def. Mot. at 9–10.)

Foulke argues that all of LoMonico's claims fall into one or more of these categories, and thus must be arbitrated. (*Id*.) LoMonico does not dispute that his claims fall within the scope of the arbitration agreement; rather, he argues only that the parties never entered into a valid arbitration agreement. Thus, this Court will address only the first step of the analysis, "whether the parties have a valid arbitration agreement." *In re Remicade (Direct Purchaser) Antitrust Litig*., 938 F.3d 515, 519 (3d Cir. 2019).

At this first step, a court must also determine whether the Rule 12(b)(6) standard or the Rule 56 summary judgment standard is appropriate. Here, the Complaint explicitly mentions that LoMonico signed contract documents on February 27, 2018. (Compl. ¶¶10–11.) LoMonico does not dispute signing these documents, nor does he dispute that these documents included the Arbitration Agreement itself, as well as the MVRO with the arbitration provision. "Under

7

*Guidotti*'s first pathway, therefore, the affirmative defense of arbitrability [is] apparent on the face of [the] complaint," and application of Rule 12(b)(6) may be appropriate. *Horton v. FedChoice Fed. Credit Union*, 688 F. App'x 153, 157 (3d Cir. 2017) (internal quotations omitted); *see also Stacy v. Tata Consultancy Servs., Ltd.*, Civ. No. 18-13243, 2019 WL 1233081, at *5 (D.N.J. Mar. 14, 2019) (finding that the affirmative defense of arbitrability was apparent on the face of a complaint where the complaint referenced an employment application that contained an arbitration agreement, despite not referencing the arbitration section specifically).

Thus, in order to invoke the summary judgment standard that would allow for his requested period of discovery, LoMonico would need to come "forward with 'reliable evidence that is more than a naked assertion . . . that [he] did not intend to be bound by the arbitration agreement.'" *Andre v. Dollar Tree Stores, Inc.*, Civ. No. 18-142, 2018 WL 3323825, at *4 (D. Del. July 6, 2018) (quoting *Guidotti*, 716 F.3d at 774). As discussed below, he cannot do so.

### *New Jersey CFA*

LoMonico first argues that there is an issue of fact as to whether he was provided with copies of the signed agreements. He argues that Foulke violated New Jersey's Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-2.22 by not providing him with copies of the documents he signed, causing the contract and any arbitration provision within it to be invalid.[2] He argues that *Guidotti* requires a period of limited discovery on this issue before compelling arbitration. (Doc. 7 at 10.) In making this argument, LoMonico leans heavily on the Superior Court of New Jersey, Appellate

---

[2] The statute, in relevant part, states:

> It shall be an unlawful practice for a person in connection with a sale of merchandise to require or request the consumer to sign any document as evidence or acknowledgment of the sales transaction, of the existence of the sales contract, or of the discharge by the person of any obligation to the consumer specified in or arising out of the transaction or contract, unless he shall at the same time provide the consumer with a full and accurate copy of the document so presented for signature.

N.J.S.A. § 56:8-2.22 (West).

Division's decision in *Goffe v. Foulke Mgmt. Corp.*, 185 A.3d 248 (N.J. App. Div. 2018), *rev'd*, 208 A.3d 859 (N.J. 2019). As *Goffe* is so parallel to this case, an extended discussion is warranted here.

In *Goffe*, a strikingly similar situation existed: the plaintiffs had attempted to buy cars from Foulke, conveyed to Foulke a trade-in vehicle, and signed contract documents containing arbitration agreements. *Goffe*, 185 A.3d at 251–253. The plaintiffs ultimately decided not to purchase vehicles from Foulke, but had trouble getting Foulke to immediately return the vehicles they had traded-in. *Id*. When the plaintiffs brought suit, Foulke moved to compel arbitration; the plaintiffs opposed this, claiming that Foulke had violated New Jersey's CFA by not providing them with copies of the documents they signed, thus making any arbitration provision invalid. *Id*. The trial court granted Foulke's motion to compel, determining the claims were arbitrable, and the plaintiffs appealed. *Id*. at 253.

Interpreting and applying *Guidotti*, the New Jersey Superior Court, Appellate Division found that the "particular arbitration provisions included within the parties' sale contracts are capable of being enforced." *Id*. at 255. However, in light of the dispute over whether the plaintiffs received copies of the documents they signed, the Appellate Division reversed the trial court, finding that the trial judges were required to resolve this dispute through limited discovery before compelling arbitration. *Id*. at 259. It reasoned that, under the New Jersey CFA, "[t]o have an enforceable contract with an included enforceable arbitration provision, a seller—like defendants here—must provide to a consumer the contract documents they signed." *Id.* at 257.

LoMonico's arguments echo the Appellate Division's reasoning; he asks this Court to interpret *Guidotti* as the state court did, and allow a period of discovery to resolve the dispute over whether LoMonico ever received copies of the documents he signed, and thus whether N.J.S.A.

9

56:8-2.22 rendered the entire contract, including the arbitration agreement, unenforceable. (Pl. Resp. at 20.)

LoMonico's arguments have been severely undercut, however, by the fact that the New Jersey Supreme Court recently reversed the Appellate Division, finding that it misinterpreted *Guidotti*, and that compelling arbitration was in fact proper. *Goffe v. Foulke Mgmt. Corp.*, 208 A.3d 859, *reconsideration denied*, 213 A.3d 184 (N.J. 2019). In reversing, it held that *Guidotti* did "not permit threshold issues about overall contract validity to be resolved by the courts when the arbitration agreement itself is not specifically challenged." *Id*. at 862. The court stated:

> Plaintiffs assert common law and statutory violation theories that allegedly invalidate their overall sales agreements or otherwise render them unenforceable. While we do not address the merits of those claims, it is clear to us that plaintiffs attack the sales contracts in their entirety, challenging their formation process and arguing that they are, at best, unenforceable. They do not challenge the language or clarity of the agreements to arbitrate or the broad delegation clauses contained in those signed arbitration agreements. In this setting, the Supreme Court's precedent compels only one conclusion. On the question of who gets to decide plaintiffs' general claims about the validity of their sales contracts, we hold that an arbitrator must resolve them, as well as any arbitrability claims that plaintiffs may choose to raise under these delegation clauses.

*Id*.

The court added that there were factual differences between the plaintiffs in *Guidotti* and *Goffe* that compelled a different result in each case. In *Guidotti*, "the dispositive issue was whether an account agreement document, which included an arbitration clause, was included in the initial package of documents emailed to the plaintiff." *Id*. at 874. Thus, the *Guidotti* plaintiff was disputing "the validity of the arbitration agreement itself," claiming that she did not assent to it because, unlike the other contract documents she signed, she did not see it. Conversely, the *Goffe* plaintiffs did "not dispute the validity of the arbitration agreement or its delegation clause other than to say that it is invalid as a result of the invalidity of the contract as a whole." *Id*. at 874. Thus,

the court ultimately held that:

> Federal precedent instructs that the arbitration agreements here be severed from the rest of the agreement, whose totality [plaintiffs] contest on a number of grounds. [Plaintiffs] must arbitrate their claims as to the enforceability of the overall sales contract. As a result, their various statutory and common law claims, including their CFA claims, which allege that defendants failed to give plaintiffs copies of the contracts they signed, in violation of N.J.S.A. 56:8-2.22, should be decided by the arbitrator.

*Id.* at 873.

Here, LoMonico makes the same argument that the plaintiffs in *Goffe* made: he argues that, if he never received copies of the contract documents after he signed them, the entire contract would be invalid under the New Jersey CFA, and the arbitration agreement within the contract could not be enforced. (Pl. Resp. at 19.) He argues that *Guidotti* thus requires a period of limited discovery. (Pl. Resp. at 23.)

LoMonico's argument is unavailing. The New Jersey Supreme Court considered and rejected this exact legal argument in *Goffe*, and United States Supreme Court caselaw demands the same result. LoMonico argues that the entire contract is invalid under the New Jersey CFA, rather than arguing that the specific arbitration provisions are invalid.[3] "[U]nder the severability principle, [courts] treat a challenge to the validity of an arbitration agreement (or a delegation clause) separately from a challenge to the validity of the entire contract in which it appears. Unless a party specifically challenges the validity of the agreement to arbitrate, both sides may be required to take all their disputes—including disputes about the validity of their broader contract—to arbitration." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019) (citing *Rent-A-Center, West,*

---

[3] The Court notes that, at one point in LoMonico's opposition brief, he does claim to specifically challenge the arbitration agreement. (Pl. Resp. at 13.) However, he immediately then claims that he is challenging the validity of the entire agreement, and that the arbitration agreement "was not a separate standalone agreement but an integral attachment to the MVRO," and that all the documents he signed were clearly integrated. (Pl. Resp. at 15.) It is insufficient to include a single sentence, inconsistent with the rest of the brief, in an apparent attempt to evade the severability principle.

11

*Inc. v. Jackson*, 561 U.S. 63, 68–71 (2010)). Further, when an arbitration agreement contains a delegation clause, the arbitrator has "authority to decide even the initial question whether the parties' dispute is subject to arbitration." *New Prime*, 139 S. Ct. at 538.

Because the contract here contains a delegation clause, and because LoMonico challenges the entire contract as opposed to the arbitration provision or delegation clause, his argument that the contract is invalid under the New Jersey CFA and therefore cannot be arbitrated fails.

### *Fraudulent Inducement*

LoMonico next argues that a period of discovery is warranted on the issue of whether he was fraudulently induced into signing the contract documents on February 27, 2018. (Pl. Resp. at 22.) He asserts that Foulke represented to him that the agreement would not be binding until Plaintiffs paid $2,700 the next day. (*Id.*) LoMonico's argument on this point relies on *Corchado v. Foulke Mgmt. Corp.,* Civ. No. 15-6600, 2016 WL 2727268 (D.N.J. May 6, 2016), *report and recommendation adopted*, 2017 WL 627427 (D.N.J. Feb. 15, 2017), *aff'd*, 707 F. App'x 761 (3d Cir. 2017).

In *Corchado*, the plaintiffs argued that they were fraudulently induced into signing arbitration agreements. *Id*. There, the defendant stated that the document plaintiffs signed was simply confirming the plaintiffs had sufficient insurance to take a vehicle for a test drive, when in actuality the document was an arbitration agreement. *Id.* at *2. Further, defendants "used their hands to physically cover up portions of the documents [plaintiffs] signed." *Id*. at *2. The facts in *Corchado* thus differ significantly from those present here: LoMonico does not claim that he was unable to read the contract documents before signing them, nor does he allege that Foulke misrepresented the content of the documents. He merely alleges that Foulke misrepresented the point at which the contracts would be binding.

Importantly, LoMonico is arguing he was fraudulently induced into entering the *entire* contract, and not just the arbitration provision. A "challenge based on fraud in the inducement of the whole contract (including the arbitration clause) is for the arbitrator, while a challenge based on the lack of mutuality of the arbitration clause would be for the court." *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 105 (3d Cir. 2000) (internal quotations omitted). As such, this dispute is appropriately heard by an arbitrator. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) (holding that an arbitrator, and not a court, should "consider claims of fraud in the inducement of the contract generally"); *see also Moyer v. Wells Fargo*, Civ. No. 17-2088, 2018 WL 4956822, at \*5 (M.D. Pa. Sept. 27, 2018), *report and recommendation adopted*, 2018 WL 4956693 (M.D. Pa. Oct. 12, 2018) (explaining that "courts distinguish between a fraudulent inducement to enter into a contract generally, and a more specific claim that a party was fraudulently induced to agree to arbitrate contractual disputes. Only the latter may be exempted from the FAA, not the former.").

LoMonico's situation here is not the one contemplated by *Guidotti,* in which the plaintiff challenged the arbitration agreement specifically, rather than challenging the entire contract. Accordingly, Foulke's motion to compel arbitration of LoMonico's claims is granted; LoMonico's "substantive claims, as well as his challenges concerning arbitrability, all must be decided by the arbitrator."[4] *See Huertas v. Foulke Mgmt. Corp.*, Civ. No. 17-1891, 2017 WL 6447868, at \*5

---

[4] This outcome should be unsurprising to LoMonico, as *Corchado*, a case he heavily relies on in his opposition brief, explicitly comports with such a result:

> As is the case with any contract, parties are free to contract for nearly anything—including, as is relevant here, agreeing "to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson,* 561 U.S. 63, 69 (2010). In order to avoid arbitration in the face of such a contractual provision, a party must challenge the validity of the arbitration agreement itself, and not, broadly, the contract as a whole. "[I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court

(D.N.J. Dec. 18, 2017) (compelling arbitration and staying the case where the plaintiff challenged the contract as a whole, rather than only the arbitration provision). LoMonico's claims will be stayed pending arbitration.

### B. Stephenson's Claims

As for Plaintiff Stephenson's claims, Foulke argues that they should be dismissed, as he does not assert facts that support his causes of action. (Def. Mot. at 15.) As explained below, the Court finds that addressing Foulke's motion to dismiss is imprudent at this point in the litigation.

Stephenson and LoMonico originally brought this suit together, as their claims arise from the same set of facts: they visited Cherry Hill Dodge together, they apparently co-own the trade-in Buick that is the subject of this dispute, and Stephenson intended to co-finance the acquisition of the Dodge Ram. However, although their claims arise from the same set of facts, only LoMonico is subject to the arbitration agreement. "Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983). Thus, despite Stephenson's presence, LoMonico's claims are subject to arbitration.

However, "[i]n some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket." *Id*. at 21. LoMonico disputes the validity of the entire contract he signed. If the arbitrator finds that the contract, including the arbitration

---

may proceed to adjudicate it. But the [FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967).

*Corchado v. Foulke Mgmt. Corp.*, Civ. No. 15-6600, 2017 WL 627427, at *3 (D.N.J. Feb. 15, 2017), *aff'd*, 707 F. App'x 761 (3d Cir. 2017).

agreement, is invalid, then he will likely return to litigate in this Court, where his action is stayed. In the event that this occurs, it would be sensible for Stephenson and LoMonico to litigate their claims together, as they initially attempted to do, to avoid inconsistent rulings.

Thus, this Court will stay the entire case, including Foulke's motion to dismiss Stephenson's claims, pending arbitration. *See, e.g., In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 293 (4th Cir. 2007) ("A decision to stay related claims pending arbitration is a matter entrusted to the discretion of the district court"); *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2d Cir. 1964) (holding that a stay may "be appropriate where the pending proceeding is an arbitration in which issues involved in the case may be determined"); *Villano v. TD Bank*, Civ. No. 11-6714, 2012 WL 3776360 (D.N.J. Aug. 29, 2012) (finding it inappropriate "to rule on the motion to dismiss during the pendency of the arbitration" and noting that "the Supreme Court has recognized[] staying litigation among parties not subject to arbitration provisions, as well as those that are subject to arbitration provisions, may be a better course of action").

### IV.   CONCLUSION

For the reasons expressed herein, Foulke's motion (Doc. 4) is GRANTED IN PART and DENIED IN PART; specifically, the motion to compel arbitration of LoMonico's claims is granted, and the motion to dismiss Stephenson's claims is denied. This case is STAYED pending arbitration. An accompanying Order shall issue.

Dated:   2/20/2020                                          s/ Robert B. Kugler
                                                                                                     ROBERT B. KUGLER
                                                                                           United States District Judge